**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANN S.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.   24-cv-6517** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                    **October 9, 2025**

Plaintiff Ann S. brought this action seeking review of the Commissioner of Social Security Administration's (SSA) decision denying her claim for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 403-433, 1381-1383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 13) is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

## I.      PROCEDURAL HISTORY

Plaintiff filed for SSDI and SSI, alleging disability since June 29, 2019, due to major depression, generalized anxiety disorder and posttraumatic stress disorder.  (R. 230, 240).  Plaintiff's application was denied at the initial level and upon reconsideration, and she requested a hearing before an Administrative Law Judge (ALJ).  (R. 81-92, 99-108).  Plaintiff, represented by counsel, and a vocational expert (VE) testified at the February 7, 2024 administrative hearing.  (R. 33-42).  On February 21, 2024, the ALJ issued a decision unfavorable to Plaintiff.  (R. 14-

32).  Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on October 10, 2024, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (R. 1-6).

On December 6, 2024, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania.  (Compl., ECF No. 1).  Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) three days later.  (Consent, ECF No. 5).  On May 7, 2025, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF No. 13).  The Commissioner filed a response on July 3, 2025, and Plaintiff filed a reply on September 17, 2025.  (Resp., ECF No. 16; Reply, ECF No. 22).

## II.    FACTUAL BACKGROUND[1]

Plaintiff graduated from high school.  (R. 231).  She previously worked as a caregiver at senior care centers, a band tacker at a hat company and as a temporary laborer.  (*Id.*).

### A.    Medical Evidence

On July 8, 2019, Plaintiff presented for counseling services at Lancaster General Health following the sudden death of her fiancé one week earlier.  (R. 2313).  She was referred for social services.  (*Id.*).  Ensuing counseling sessions through November 2019 centered on Plaintiff's processing of her grief.  (R. 2325, 2331, 2337, 2344, 2350, 2356, 2362, 2369, 2376, 2383).  In December 2019, she reported ongoing grief but improved mood with decreased anxiety and depression.  (R. 2390).  Following the birth of twins, she indicated at a January 2020 session that she was feeling overwhelmed with increased depression and anxiety and decreased

---

[1] Because Plaintiff's request for review implicates only her impairments related to her mental health, the Court does not summarize the evidence related to her physical impairments.

motivation and energy. (R. 2406). Her mood improved the following month, although she continued to grieve and feel overwhelmed and depressed. (R. 2442, 2450, 2471). She continued to take Wellbutrin and sertraline (Zoloft) for her major depressive disorder. (R. 2450-51). In March and April 2020, she related difficulties with her family and the outbreak of Covid-19. (R. 2479, 2492, 2505). She told her therapist in May 2020 that she had had a recent "break down" but that she was "functioning normally recently" despite some lingering thoughts of being better off dead. (R. 344). Her nighttime crying spells had increased, although her medications had improved her mood. (R. 345). Her mental examination was largely normal albeit with limited speech spontaneity, recent mood issues, a constricted affect and a prior passive death wish. (R. 345-46). Insight and judgment were noted to be fair. (R. 346). At her June 2020 appointments she endorsed flashbacks, guilt and grief regarding her fiancé's passing; concentration and sleeping difficulties; decreased interest; and an "up and down" mood, which had not been helped by Zoloft. (R. 353, 371, 379). Her examination was largely similar to the prior one except for increased anxiety. (R. 353-54). Plaintiff admitted to not taking her Wellbutrin, and her depression was described as "moderate." (R. 354, 387). She began to be weaned off Zoloft, and her Wellbutrin was increased. (*Id.*). At the final visit of the month, Plaintiff was "not doing well" and referred for hospitalization. (R. 387).

From June 24 until July 3, 2020, Plaintiff was involuntarily committed after telling her sister she no longer wanted to live. (R. 627). She complained of depression, anxiety, racing thoughts, decreased sleep and appetite, flashbacks of finding her deceased fiancé, concentration difficulties, despair, hopelessness, and indecisiveness. (*Id.*). She was diagnosed with a severe episode of recurrent major depressive disorder. (R. 652). Upon her discharge, she received partial hospitalization treatment at Community Services Group until May 19, 2021, when she was transferred to outpatient services. (R. 627). During this period, Plaintiff achieved more

consistent moods with increased contentment and less frequent suicidal ideation, despite ongoing symptoms. (R. 627-28).

Upon her return to outpatient counseling in September 2020, Plaintiff continued to grieve the loss of her fiancé, with ongoing sadness, decreased motivation, difficulty sleeping and flashbacks. (R. 458, 466, 474). Similar symptoms continued throughout October 2020. (R. 481, 494, 502). On October 26, 2020, she sought treatment at Ephrata Community Hospital "after being found altered and drowsy at home," although it was further noted that she had "become more responsive with time." (R. 713). She was discharged the following day. (R. 721). At her November 2020 counseling sessions, Plaintiff reported stress, depression, anxiety, grief, and a passive death wish. (R. 519, 527, 535). Over the following two months, she indicated similar symptoms and acknowledged not taking her medication every day, but she also stated that she felt better after attending group therapy, had some "pretty good" or "pretty positive" days, and an improved mood. (R. 545, 553, 563, 1752, 1760, 1769). In February and March 2021, Plaintiff told her counselor that she was struggling with depression, "down mood" and decreased motivation, which were reflected in her mental status examination. (R. 1657, 1665, 1787, 1817). She regularly attended group therapy and was in a "better mood" during the next two months, albeit with "moments of sadness." (R. 1831, 1843). Plaintiff complained of nightmares, anxiety and worsening depression to her family doctor (Elaine Russo, M.D., of Family Medicine New Holland) in July 2021 and was prescribed Lexapro, prazosin, and hydroxyzine. (R. 766). At her next appointment with her in August 2021, she requested a medication adjustment due to ongoing symptoms, and her Lexapro was increased. (R. 764). In September 2021, she told Dr. Russo she was "doing well" on the increased dosage of Lexapro, with no side effects. (R. 761). At the end of the year, she requested and received a further increase of her Lexapro dosage and was referred back to counseling. (R. 758).

Plaintiff was hospitalized for major depressive disorder from March 28 to April 5, 2022. (R. 678, 1983). In May 2022, Thomas Kohl, M.D., at Family Medicine New Holland observed that Plaintiff "certainly looks better than [the] day we admitted her." (R. 1715). However, throughout the summer of 2022, she continued to report anxiety, flashbacks of her fiancé's death, nightmares, and a passive death wish. (R. 1920, 1946, 1959). She was prescribed prazosin and her dosage of fluoxetine and gabapentin were increased. (R. 1920, 1958).

On June 22, 2022, State agency psychological consultant Karen Plowman, Psy.D., found that Plaintiff had moderate limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (R. 47). Within each of these broad functional areas, respectively, the ALJ further determined that Plaintiff had: (1) a moderate limitation in the ability to understand and remember detailed instructions, but no significant limitations with very short and simple ones or with remembering locations and work procedures; (2) moderate limitations in maintaining attention and concentration for extended periods and in performing activities within a schedule, maintaining regular attendance, and being punctual within customary limits, but no significant limitations with carrying out instructions (simple or detailed), sustaining an ordinary routine without special supervision, working with or near others without being distracted, making simple work decisions, or completing a normal workday and workweek without interruptions from psychologically based symptoms or performing at a consistence pace without an unreasonable number or length of rest periods; (3) moderate limitations in interacting appropriately with the general public and accepting instructions and responding appropriately to criticisms from others, but no significant limitations in asking simple questions or requesting assistance, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, or maintaining socially appropriate behavior without interruptions from psychologically based

5

symptoms or performing at a consistent pace without an unreasonable number or length of rest periods; and (4) moderate limitations in responding appropriately to changes in the work setting and traveling to unfamiliar places or using public transportation, but no significant limitations in being aware of normal hazards and taking appropriate precautions or setting realistic goals or making plans independently of others.  (R. 49-50).

From September 2022 through October 2023, Plaintiff received individualized, home-based peer services from Recovery Insight.  (R. 2279-2310).  These services included teaching her independent living skills, modeling/teaching effective communication/conflict resolution skills, and active listening/visualizing strengths.  (*Id.*).

On November 17, 2022, psychological consultative examiner Kyle Elizabeth Culver, Psy.D., completed a Mental Status Examination of Plaintiff.  (R. 2010-21).  She noted that Plaintiff worked at a printing company until she resigned in 2019 due to the death of her children's father.  (R. 2010).  Plaintiff reported three prior psychiatric hospitalizations.  (*Id.*).  Current symptoms included sleep disruptions (falling asleep and waking), decreased appetite, dysphoric mood, hopelessness, loss of interest in usual activities, fatigue, worthlessness, diminished self-esteem, concentration difficulties, decreased motivation, anxiety, PTSD symptoms (including exposure to trauma, flashbacks, and nightmares) and cognitive symptoms (including short-term memory deficits).  (*Id.*).  Examination results were normal except Plaintiff reported being "a little anxious," was observed to be "neutral to anxious" and had average to below average intellectual functioning.  (R. 2012).  Insight and judgment were both "[g]ood to fair."  (*Id.*).  Activities of daily living (ADLs) included personal care, managing money, driving, socializing with a few friends and her parents, and spending time with her five children.  (R. 2012-13).  Dr. Culver assessed her prognosis as fair.  (R. 2013).

6

In the attached Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Culver opined that due to her anxiety and PTSD Plaintiff had mild to moderate limitations in interacting appropriately with others and in responding appropriately to usual work situations and to changes in a routine work setting.  (R. 2015).  Nonetheless, she further opined that Plaintiff has no limitations in understanding, remembering and carrying out simple or complex instructions or making judgments on simple or complex work-related decisions.  (R. 2014).

Upon reconsideration, on January 17, 2023, Melissa Franks, Psy.D., also found that Plaintiff had moderate limitations in interacting with others and adapting or managing oneself but only mild limitations in understanding, remembering, or applying information, and in concentrating, persisting, or maintaining pace.  (R. 67).  Specifically, she determined that Plaintiff had moderate limitations in interacting appropriately with the general public, in accepting instructions and responding appropriately to criticism from supervisors, in getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and in responding appropriately to changes in the work setting, but no other significant social interaction limitations.  (R. 69).

In January and April 2023, Plaintiff reported improvement with her medication regimen, albeit with one "meltdown" during noncompliance.  (R. 2583-84, 2606).  However, in June 2023 she acknowledged that she had discontinued all her medications 2.5 months ago because she "got tired of taking pills."  (R. 2629).  Plaintiff was restarted on gabapentin and prazosin, but not Abilify.  (R. 2630).  She again reported in October 2023 that she had stopped taking her medications three weeks prior and that she had "not been feeling well since."  (R. 2748).  Specifically, her depression had increased, her mood was "not good," and her nightmares had returned.  (*Id.*).

On January 23, 2024, Plaintiff's counselor, Lorianne Martin, LPC, completed a Mental Impairment Questionnaire in which she explained that since April 2022 she had treated Plaintiff with a variety of therapies and biblical counsel one to two times per week for generalized anxiety disorder, other specified depressive disorder, and PTSD, and that Plaintiff had "responded positively" to these treatments. (R. 3256). Clinical findings included inability to concentrate, focus, and communicate but without impairment of thought process; ruminating and disconnected thoughts; tiredness; sadness; crying spells; repeated fixation on traumatic events; and exaggerated startle response. (R. 3257). She further assessed Plaintiff with suspected low IQ or reduced intellectual functioning. (*Id.*). Martin recorded that Plaintiff had experienced episodes of deterioration in functioning related to increased demands that made it difficult to sustain age-appropriate activity over time. (R. 3258). However, she denied that Plaintiff had had any periods of medical noncompliance that were related to her mental health disorders. (*Id.*).

Martin checked boxes indicating that Plaintiff suffers from the following symptoms: anhedonia, sleep disturbances, feelings of guilt or hopelessness, decreased energy, difficulty concentrating or thinking, thoughts of death or suicide, distractibility, repetitive behaviors that appear aimed at reducing anxiety, disorganized thinking/speech, easy fatigability, irritability, flight of ideas, muscle tension, restlessness, observable psychomotor agitation, disproportionate fear or anxiety about at least two different situations (such as using public transportation or being in a crowd or outside the home), panic attacks followed by persistent concern about additional attacks or their consequences, involuntary and time-consuming preoccupation with unwanted thoughts, disturbances in mood and behavior, detachment from social relationships, distrust and suspiciousness of others, excessive need to be taken care of, excessive emotionality, memory impairment or inability to learn reflecting significant cognitive decline, involuntary re-experiencing of a traumatic event, feelings of inadequacy, increases in arousal or reactivity,

8

instability of interpersonal relationships, altered voluntary motor or sensory function, and impaired executive functioning.  (R. 3259-60).

Additionally, Martin evaluated Plaintiff on the same four broad areas of mental functioning and more numerous specific mental abilities also assessed by the State agency psychological consultants.  (R. 3262-63).  She concluded that Plaintiff had marked limitations in understanding, remembering or applying information and interacting with others, as well as extreme limitations in concentrating, persisting, or maintaining pace and adapting or managing oneself.  (R. 3262).  She further determined that Plaintiff had moderate limitations (limited but satisfactory abilities) in carrying out very short and simple instructions, getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, and being aware of normal hazards and taking appropriate precautions.  (R. 3261).  For every other mental ability, Martin assessed Plaintiff with a marked limitation (inability to perform satisfactorily).  (*Id.*).

She predicted that Plaintiff could only work full-time at less than 80 percent efficiency, that she would be unable to complete a full workday zero to one time per month due to her impairments and/or need for treatment, and that she would be absent four or more days per month.  (R. 3262).  She further explained that Plaintiff was "dedicated to getting help" and would likely "make progress," but it would be "limit[ed]" due to her added stress from trauma and ongoing personal issues.  (R. 3263).

### B.    Nonmedical Evidence

The record also contains nonmedical evidence.  At the February 7, 2024 administrative hearing, Plaintiff testified that she has suffered from major depressive disorder, anxiety and PTSD since finding her fiancé and children's father dead.  (R. 36).  She complained of difficulty sleeping, "flash nightmares," self-isolation, difficulty getting out of bed or functioning two or

three times per week, passive thoughts of suicide "that come and go," and twice-weekly, 15-minute, stress-induced anxiety attacks characterized by hyperventilation, rapid heartbeat, lightheadedness and, after the attack, difficulty thinking straight or concentrating for an hour or two. (R. 36-39). Nonetheless, she also reported "good days" "[a] couple times a week depending on what's going on . . . ." (R. 38). On these days, Plaintiff helps with household chores like laundry and washing dishes and assists her mother, who lives with her, to care for Plaintiff's school-aged children; on bad days, she does not participate in these activities. (R. 38-39).

On May 9, 2022, Plaintiff completed an Adult Function Report in which she stated that her normal day consists of waking up at noon, lying on the sofa and attempting to care for her children. (R. 253). She also uses Facebook and socializes with her mother, who primarily handles childcare, pet care and household chores. (R. 253, 256). She is able to manage money, except that she "had a shopping addiction" and "got behind on [her] bills." (R. 255). Plaintiff reported require reminders to engage in personal care or take medicine and only going outside for appointments, to which her mother drives her. (R. 252, 255-56). She endorsed problems with talking, hearing, memory, completing tasks, concentration, understanding, following instructions and getting along with others (but not authority figures). (R. 257). She noted that she does not handle stress or changes in routine well and that she exhibits nighttime paranoia characterized by having to check that doors and windows are locked. (R. 258).

Plaintiff's mother, Darlene S., completed a Third-Party Adult Function Report on May 19, 2022, in which she largely restated the substance of Plaintiff's earlier report. (R. 260-70). New information in the report included that Plaintiff has five children and that she does not drive due to fear. (R. 261, 263).

On September 4, 2022, Plaintiff's social worker, Melissa Evans, also completed a Third-

Party Adult Function Report. (R. 294-301). She added that Plaintiff lives with family because she cannot care for herself and that she utilizes Safe Families respite care for two of her children. (R. 294). She further clarified that Plaintiff prepares simple meals with the assistance of her mother and that she is able to drive, although not alone. (R. 296-97). Ms. Evans contradicted Plaintiff's and her mother's claims that Plaintiff cannot get along with others, indicating that she has "no problems" in this area and that she is "a people pleaser." (R. 298). Additionally, she endorsed significantly fewer difficulties for Plaintiff than previously reported, only checking the boxes on the form regarding problems with memory, concentration and following instructions and explaining that, for the latter, Plaintiff will normally ask for clarification. (R. 298). Moreover, she stated that Plaintiff attends church regularly and socializes with others on the phone and via text a few times per week. (R. 299).

Finally, Plaintiff completed another Adult Function Report on September 12, 2022. (R. 302-09). This report generally mirrors her earlier one, except she added that friends sometimes visit her. (R. 306).

## III.    ALJ'S DECISION

Following the administrative hearing held on February 7, 2024, the ALJ issued a decision in which he made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2.    The claimant has not engaged in substantial gainful activity since June 29, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: depression, anxiety and PTSD. (20 CFR 404.1520(c) and 416.920(c)).

11

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple and routine tasks, involving only simple, work-related decisions, and with few, if any, work place changes, and only occasional interaction with supervisors, coworkers, and the public.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on November 8, 1988 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969,

and 416.969a). (R. 17-27).

11.    The claimant has not been under a disability, as defined in the Social Security

Act, from June 29, 2019, through the date of this decision (20 CFR 404.1520(g)

and 416.920(g)).

Accordingly, the ALJ found Plaintiff was not disabled.  (R. 26).


## IV.    LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to

the Commissioner that he cannot engage in substantial gainful activity because of a medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. §

1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently
> engaged in substantial gainful activity.  If she is not, then the
> Commissioner considers in the second step whether the claimant has
> a "severe impairment" that significantly limits her physical or
> mental ability to perform basic work activities.  If the claimant
> suffers a severe impairment, the third inquiry is whether, based on
> the medical evidence, the impairment meets the criteria of the
> impairment listed in the "listing of impairments," . . . which result
> in a presumption of disability, or whether the claimant retains the
> capacity to work.  If the impairment does not meet the criteria for a
> listed impairment, then the Commissioner assesses in the fourth step
> whether, despite the severe impairment, the claimant has the
> residual functional capacity to perform her past work.  If the
> claimant cannot perform her past work, then the final step is to
> determine whether there is other work in the national economy that
> the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).  The disability claimant bears the burden of establishing steps one through four.

If the claimant is determined to be unable to resume previous employment, the burden shifts to

the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).


## V.    DISCUSSION

In her request for review, Plaintiff raises three issues: (1) the ALJ failed to properly evaluate the opinion of L. Martin, LPC, the treating counselor; (2) the ALJ's multiple errors with symptom evaluation compel reversal; and (3) the Commissioner did not meet his burden because the ALJ's mental residual functional capacity (RFC) lacked evidentiary support. (Pl.'s Br., ECF No. 13, at 1) (reordered).

### A.    Martin's Opinion

#### 1.    The Parties' Positions

Summarizing the applicable background law, Martin's opinion, and the ALJ's rejection of it as inconsistent with the State agency consultants' and consultative psychologist's opinions,

Plaintiff posits that the ALJ erred because Martin explained the grounds for her opinion and it was consistent with other record evidence. (Pl.'s Br., ECF No. 13, at 7-9 (citations omitted)). Citing cases for the proposition that mental assessments tend to be based on information given to the provider by the patient, Plaintiff catalogs her symptoms, as self-reported to Martin, and the latter's resultant findings. (*Id.* at 9-10 (citing R. 3257, 3259-60; *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015); *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003); *Korzeniewski v. Colvin*, No. 12 C 6895, 2014 U.S. Dist. LEXIS 51004, at *21 (N.D. Ill. Apr. 14, 2014))). She insists that if the ALJ had properly considered this evidence, he would have credited Martin's opinion. (*Id.* at 10-11 (citing 20 C.F.R. § 404.1520c(b)(2); *Andrews v. Kijakazi*, No. 20-cv-1878, 2022 WL 617118, at *21-22 (M.D. Pa. Mar. 2, 2022); *Brownsberger v. Kijakazi*, No. 20-cv-1426, 2022 WL 178819, at *15-19 (M.D. Pa. Jan. 18, 2022))).

Moreover, Plaintiff argues that Martin's opinion was consistent with other evidence in the record. She again lists at length the evidence comporting with the opinion, including diagnoses, self-described symptomology, mental status examination findings, eight- and 10-day commitments to a behavioral hospital, participation in an intensive outpatient program, an emergency room visit, and a prescription medicine regimen managed by her care providers. (Pl.'s Br., ECF No. 13, at 11-13 (citing R. 344-46, 353-54, 361-62, 400, 458, 494, 519, 545, 627, 634, 636, 652, 666, 678, 713, 716, 759-60, 764, 1665, 1715-17, 1817, 1920, 1946, 1958-59, 1983, 2450-52, 2568-69, 2583-84, 2607, 2629-30, 2632)).

After summarizing the administrative findings of the two State agency psychological consultants, Drs. Plowman and Franks, and highlighting that they are familiar with Social Security rules and regulations and had the opportunity to review the medical records submitted, the Commissioner observes that when formulating Plaintiff's RFC he adopted their proffered restriction to simple, routine tasks and Dr. Franks' additional restriction to only occasional

interaction with others.  (Resp., ECF No. 16, at 7-8 (citing R. 23, 44-52, 64-71)).  The Commissioner further notes that the ALJ added a restriction to "few if any" workplace changes due to Plaintiff's difficulty with stress.  (*Id.* at 8 (citations omitted)).  He continues that the ALJ also properly relied upon the opinion of Dr. Culver, the psychological consultative examiner, while again including additional limitations in the RFC beyond those set forth in that opinion. (*Id.* (citing R. 23-24, 2010-21)).  In short, the Commissioner insists that the ALJ appropriately explained his basis for finding Martin's opinion not persuasive because it was inconsistent with those of Drs. Plowman, Franks and Culver, who all concluded that Plaintiff had multiple but not extreme or disabling mental limitations as Martin determined.  (*Id.* at 8-9 (citing R. 24, 44-52, 54-62, 64-71, 73-80, 2010-21, 3255-63)).[2]

## 2.    Analysis

The Commissioner modified Social Security's regulations in 2017, changing the way ALJs evaluate medical evidence.  The prior regulations, governing claims filed before March 27, 2017, divided medical sources into three categories: treating, examining, and non-examining. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  ALJs were to weigh each medical opinion and could sometimes afford controlling weight to opinions from treating sources. *See id.*

Under the new regulations, ALJs do not place medical sources into these categories and can no longer afford controlling weight to any opinion.  *See id.* §§ 404.1520c(c), 416.920c(c). Instead, ALJs now evaluate the persuasiveness of each medical opinion and each prior administrative medical finding.  *See id.*  Five factors determine persuasiveness:

---

[2]  Despite seeking and obtaining a one-month extension of time to file a reply, Plaintiff merely copied her arguments from her opening brief and pasted them into the later filing. (*Compare* Pl.'s Br., ECF No. 13, at 7-25, *with* Reply, ECF No. 22, at 1-16).

(1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant firsthand; (4) specialization; and (5) other factors, like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *See id.* Supportability and consistency are the most important factors. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency. *Id.*

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(2).

It is well established that an ALJ is free to reject a medical source opinion, in whole or in part, but in so doing she must indicate why evidence was rejected so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). The ALJ must consider all pertinent medical and nonmedical evidence and "explain [any] conciliations and rejections" but need not discuss "every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004); *Burnett*, 220 F.3d at 122. Accordingly, "[t]he ALJ must provide a 'discussion of the evidence' and an

17

'explanation of reasoning' for [her] conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Burnett*, 220 F.3d at 120).

Here, the ALJ offered a one-sentence explanation as to why he found Martin's opinions not persuasive: "Her opinions are inconsistent with the opinions of the state agency consultants and with the consultative psychologist (Exhibits 2A, 4A, 6A, 8A, 13F, and 26F)." (R. 24). Thus, although the ALJ may have addressed the consistency of Martin's opinions,[3] he did not discuss or even mention the "supporting explanations presented by [the] medical source . . . to support . . . her medical opinion."[4] *Id.* § 404.1520c(c)(1). Under the applicable regulations, the ALJ must explain in his decision how he considered *both* of these factors. *See id.* § 404.1520c(b)(2) ("we will explain how we considered the supportability *and* consistency factors") (emphasis added). Because the ALJ failed to set forth one-half of the necessary analysis, the Court remands this matter for further consideration of Martin's opinion evidence.

## B.    Symptom Evaluation

### 1.    The Parties' Positions

Plaintiff's next assignment of error is that in putting together her RFC, the ALJ made multiple mistakes in symptom evaluation. (Pl.'s Br., ECF No. 13, at 19-25). First, she claims that despite the ALJ's finding that the intensity, persistence and limiting effects of her symptoms were inconsistent given that treatment helped with them, he did not consider that her mental

---

[3] The Commissioner does not assert that this error was harmless in light of the ALJ's finding that Martin's opinions were inconsistent with other record evidence, but in any event such an argument would fail because the ALJ still might have found them partially persuasive if he had considered their supportability.

[4] Indeed, the Commissioner does not argue otherwise in his response and instead parses the ALJ's consistency analysis. (Resp., ECF No. 16, at 7-9).

health medications were repeatedly altered by providers.  (*Id.* at 19 (citing R. 354, 758, 764, 1920, 1946, 1958, 2568, 2853-54)).  She adds that because a work setting is "completely different" from home or a treatment clinic for those suffering from mental impairments, a provider's observation that a patient is doing well with treatment does not automatically support an inference that the patient would continue to function well at work and thus does not necessarily conflict with the need for work-related limitations.  (*Id.* at 19 (quoting *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000); citing *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 211, 211 n.5 (3d Cir. 2019); *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008); *Williams v. Barnhart*, 211 F. App'x 101, 104 (3d Cir. 2006))).  She continues that an inference based on treatment notes regarding the claimant's functioning in a non-work setting cannot replace a provider's opinion that the claimant's "ability to function is seriously impaired or nonexistent in every area related to work[,]" absent a satisfactory explanation from the ALJ. (*Id.* at 20 (citing *Morales*, 225 F.3d at 319)).  She also points to Third Circuit precedent "admonish[ing]" ALJs who have employed such logic and distinguishing between a provider's treatment notes and "ultimate opinion on the claimant's ability to work."  (*Id.* at 20-21 (citing *Brownawell*, 554 F.3d at 356)).

Second, Plaintiff highlights the ALJ's remark regarding her missed treatment and argues that if he had concerns about it he should have questioned her on that topic at the administrative hearing pursuant to SSR 16-3p.  (*Id.* at 21 (also citing *Goudy v. Berryhill*, No. 17-1113, 2019 U.S. Dist. LEXIS 85304, at *22 (E.D. Pa. Apr. 10, 2019); *Leikheim v. Berryhill*, No. 17-1011, 2018 WL 705057, at *6 (E.D. Pa. Feb. 5, 2018))).  Third, she details her two hospitalizations, another partial hospitalization and home-based in-person peer services and accuses the ALJ of failing to explain how this "extensive treatment" for mental health problems did not suffice to support her allegations.  (*Id.* (citing R. 23, 627-29, 634, 636, 652, 666, 678, 1983, 2279-2310)).

19

She further accuses the ALJ of not addressing "the significance of [this] additional aggressive treatment to [Plaintiff's] allegations." (*Id.* at 22-23 (citing *Cordero v. Kijakazi*, 597 F. Supp. 3d 776, 799 (E.D. Pa. 2022); *DeJesus v. Kijakazi*, 20-CV-06115-RAL, 2022 WL 1062914, at *7 (E.D. Pa. Apr. 8, 2022); *Brown v. Kijakazi*, No. 20-cv-05391-RAL, 2021 U.S. Dist. LEXIS 221644, at *14-15 (E.D. Pa. Nov. 17, 2021))). Fourth, Plaintiff notes that the ALJ mentioned that treatment notes reflected that she had fair insight. (*Id.* at 23 (citing R. 22-24)). He then cites authority for the proposition that if a patient is unsure whether her symptoms are a feature of her mental illness, or is unsure they are actually happening, her "insight would be said to be fair or poor." (*Id.* (citing *Lewis v. Astrue*, No. 10 C 6447, 2012 WL 5342669, at *7 (N.D. Ill. Oct. 25, 2012) (internal citation omitted))).

Fifth, observing that the ALJ mentioned Plaintiff's ability to care for her children, she posits that this ADL, without more, does not necessarily prove that she was capable of regular and continuous work, particularly given that family care may be home-based, less stressful and more flexible than the work environment, and include rest breaks. (*Id.* (citing *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005); *Gentle v. Barnhart*, 430 F.3d 865, 867-68 (7th Cir. 2005); *Harsh v. Colvin*, No. 3:13-CV-42 GLS, 2014 WL 4199234, at *4 (N.D.N.Y. Aug. 22, 2014); *Pen v. Astrue*, No. 12-CV-01041 NC, 2013 WL 3990913, at *10 (N.D. Cal. Aug. 2, 2013); *Moss v. Colvin*, No. 1:13-CV-731-GHW-MHD, 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014); *Cooke v. Colvin*, No. 4:13-CV-00018, 2014 WL 4567473, at *15 (W.D. Va. Sept. 12, 2014))). Moreover, she submits that claimants should not be discouraged from going to "great lengths" to care for family, even if those efforts would be unsustainable in a work setting. (*Id.* at 24-25 (citing *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *McHenry v. Astrue*, No. CIV.A. 07-1360, 2008 WL 3068864, at *13 (W.D. Pa. Aug. 5, 2008); *Moss v. Colvin*, No. 1:13-CV-731-GHW-MHD, 2014 WL

4631884, at *33 (S.D.N.Y. Sept. 16, 2014))).

After reciting the applicable background law, the Commissioner claims that following consideration of the full record the ALJ adequately explained his findings, including how Plaintiff's claims of disability were inconsistent with the evidence. (Resp., ECF No. 16, at 10-11 (citing R. 20-24)). He posits generally that Plaintiff's five arguments are "mistaken" because the ALJ fulfilled his duties when he explained his reasoning sufficiently to permit a reviewing court to determine the weight given to Plaintiff's subjective statements and the bases for those assessments. (*Id.* at 11 (citing SSR 16-3p, 2016 WL 1119029, at *9)). He then excerpts that explanation at length and declares that it satisfies "the low substantial evidence threshold . . . ." (*Id.* at 12). The Commissioner also notes that a claimant need not be free of symptoms or discomfort to work and that the fact that Plaintiff had some intermittent limitations due to her chronic conditions does not mandate a disabled finding. (*Id.* (citing *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986); *Andreolli v. Comm'r of Soc. Sec.*, No. 07-1632, 2008 WL 5210682, at *4 (W.D. Pa. Dec. 11, 2008))). Adding that it is insufficient to point to evidence that merely supports rather than compels a different conclusion than the one reached by the ALJ, he argues that Plaintiff seeks an impermissible reweighing of the evidence. (*Id.* (citing *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992))).

## 2. Analysis

Based on the arguments before me, the Court finds at least one of Plaintiff's objections to the decision well-taken.[5] In particular, the Court agrees that the ALJ failed to adequately account

---

[5] The Commissioner did not respond to Plaintiff's enumerated challenges to the ALJ's decision, instead opting to set forth the applicable background law, a portion of the ALJ's evaluation of her symptoms and a pronouncement that "the foregoing evidence . . . satisfies the low substantial evidence threshold," with no real explanation beyond a few more snippets of

for Plaintiff's level of mental health treatment.  Although the Court discounted Plaintiff's two inpatient mental health hospitalizations (euphemistically referred to in the decision as "exacerbations") on the basis that neither lasted a full year, Plaintiff does not have to remain hospitalized to be found disabled.  *See Goolsby v. Berryhill*, No. 4:17-CV-2508, 2019 WL 1326988, at *4 (E.D. Mo. Mar. 25, 2019) ("a person with mental impairments does not have to be hospitalized . . . every day to be found disabled") (citing *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005)).  The Court characterized her remaining mental health care as "outpatient," (R. 23), but this label, without more, does not do justice to her 10-month partial hospitalization, which otherwise went unmentioned in the ALJ's symptom evaluation set forth by the Commissioner. (*See* R. 637 (noting that *upon the completion* of partial hospitalization she was transferred to "outpatient")).

For this reason, the Court also remands this matter on the basis of Plaintiff's second claim.

### C.    Mental RFC

In her remaining claim, Plaintiff asserts that the mental RFC assessed by the ALJ lacks an evidentiary basis, particularly as to the absence of any pace-related limitations contained therein. (Pl.'s Br., ECF No. 13, at 14).  Because the Court is remanding this matter for further consideration of Martin's opinion and Plaintiff's symptoms generally, which may in turn affect the ALJ's determination regarding Plaintiff's mental RFC, I do not address Plaintiff's argument regarding the propriety of the current RFC.  *See Steininger v. Barnhart*, No. 04-5383, 2005 WL

---

generally applicable case law.  (Resp., ECF No. 16, at 10-13).  However, the Court finds it unnecessary to consider Plaintiff's remaining grounds for relief under this claim, given that this Court is already remanding on the basis of Plaintiff's first claim and now remands on the basis of the second one as well.

2077375, at *4 (E.D. Pa. Aug. 24, 2005) (not addressing additional arguments because the ALJ may reverse his findings after remand). It is possible that, on remand, the ALJ may reach different conclusions as to the RFC, obviating the instant challenge to the RFC as currently constituted.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff's request for review is granted, and the matter is remanded for further proceedings consistent with this memorandum.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge